The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases and a bunch of good lawyers and law students and we'll take them in order. In United States v. Naum, the first case, number 20-4133. Ms. McArdle. Good to have you with us, Ms. McArdle. Thank you, Your Honor. May it please the Court, my name is Elgin McArdle and I represent Dr. Naum, the defendant in the case below. As the Court is aware, on June 27, 2022, the United States Supreme Court issued its decision in Rouen v. United States and the United States Supreme Court granted cert on my client's case. To review this Court's ruling, the Fourth Circuit's ruling issued on October 13, 2020, dismissing all of my client's arguments on appeal by memorandum decision. The United States Supreme Court vacated the memorandum decision and remanded the matter for further consideration in light of Rouen. Since then, this Court has had the opportunity in United States v. Smithers to address the Rouen decision and we believe that both the Rouen decision and the Smithers decision requires a reversal of my client's convictions in the Court below. On that point, how is this case, if it is, distinguishable from Smithers? Well, I think the difference between my case, Dr. Naum's case and Smithers is that in Dr. Naum's case, the District Court completely precluded the defense of mens rea. So the mens rea defense that Dr. Naum was trying to put forward in the trial below was that there was an accept as authorized conduct. The accept as authorized conduct laid in the SAMHSA regulations that allowed certain conduct by my client. I believe the Rouen case indicates that once a defendant produces, he has the burden of production, not the burden of proof. Once he produces evidence that his conduct was otherwise accept as authorized, then the burden shifts to the prosecution to prove beyond reasonable doubt that the mens rea, that he knowingly and intentionally violated what was authorized. Can he be, notwithstanding the charge problem in this case, can he be convicted on his testimony that he knew what Nurse Jackson was doing, which seems to be a violation? Well, I think the District Court below adeptly addressed that issue with... Which it didn't answer Judge Boyd's question. Right. That's what I'm saying, that you were asking whether or not Ms. Jackson's conduct could be attributed to him. Correct. And notwithstanding the charge issue, could he be convicted then? No, I don't believe he can. I don't think he had the mens rea below that he did not authorize Ms. Jackson to do what she was doing. And in fact, in the Rule 29 colloquy, the District Court specifically asked the prosecution, well, isn't that on her? I think that's a quote from the transcript. Isn't that on her? If she refused to follow the doctor's order and went out on her own, then it is on her and she was actually convicted. But what if counsel, fair enough, it seems like your client said that she wasn't supposed to do that and he did not approve it. And he may have even said he did not know it in advance, but he said he learned about it. Right. And so if he learns about conduct that is outside the bounds of the medical practice and it continues and he doesn't stop it, how is that not knowingly allowing that to go forward? I think the issue is, Your Honor, there's two separate issues. There's two prongs. Acceptance otherwise authorized and what Dr. Nam was trying to basically put before the court, both in pretrial motions in court through his expert and on through argument, was that what he was doing through the SAMHSA regulations, which were prohibited from admission in client or at trial, was that he was permitted to delegate certain authorities to the nurse to follow up on his orders. And so by prohibiting that evidence from coming in, the District Court, in essence, precluded his entire accept authorized production of evidence. So do you agree with this as a proposition? Just generally, then we'll get to how it plays out in this case, that if a doctor is aware that a nurse operating under him from a medical standpoint is engaged in conduct that is outside the bounds of the medical practice, that the doctor learns of it and doesn't take action to stop it? Would that be a knowing violation? In the context of prescribing Suboxone, no. And that is what's missing in the record. What's missing in the record is Dr. Helm's testimony, which was Dr. Nam's expert. We tried to produce evidence through Dr. Helm's that that conduct was permissible under the SAMHSA guidelines. And what happened during that whole exchange is that the District Court, in no uncertain terms, stated to Defense Counsel, if you even go near questioning on that line of it's permissible, I will hold you in contempt. So the defense was not allowed to produce any evidence regarding Dr. Nam's subjective mens rea as to what he was permitted to do and what he was not permitted to do. Did you make a profit? I'm sorry? Did you make a profit? Oh, sure. We argued, the government filed a motion in limine at pretrial proceedings that they wanted to preclude all that evidence. The District Court ruled that we couldn't produce that evidence because it was contrary to what the government's theory of the case was. The government's theory of the case was it was either or. They did not have to prove both prongs. They only had to prove whether it was outside the bounds of medical practice. And that's the theory that they proceeded on through the entire case. Well, the thing that has bothered me about this case is that in none of these previous cases, Smithers or Lewin, nobody's dealt with this or issue. Yet we have this legal fiction out there that it can and or can be interchangeable in certain circumstances. I guess that's what the government was suggesting. But you know, in a case like this, and makes a difference as opposed to or. Oh, it does, Your Honor. And I think the Ruan case is instructive in that regard because they basically, the Ruan case specifically held that the mens rea required to convict a physician under 841 applies to except as otherwise as authorized. And so except as authorized is the first prong of the dual prong conjunctive disjunctive that the court is concerned about. But it didn't deal with directly with the and or. No, it did not. Ruan did not. Conjunctive. It did. It did not do that. And the Smithers case didn't either. No, it dealt with the jury instructions. And Judge Gregory's opinion in the Smithers case specifically reserved it in a footnote. It did, Your Honor. And the difficult... But your proposition is it had to be aimed. That's what your position was at trial, and that's what, isn't that your position on appeal? The or was error. Well, the or was error, but more particularly the Ruan reversed and remanded to address the jury instructions as everybody who practices law knows. The jury instruction because you said it should be a and rather than or. Well, you can't produce... Well, was there any other objection to the jury instruction? It was on whether it was going to be conjunctive or disjunctive. Yes, Your Honor. The objection to the jury instruction was, along with the same objection throughout the whole trial, you cannot introduce a jury instruction that evidence is not produced. And if you're not... So, in other words, you cannot... A district court can't or a judge cannot give a jury instruction for which there is no evidence. That's clear. You're not allowed to do it. It would be error to give the jury an instruction, a law instruction, when there's no facts that were presented. How about the reverse of that, going back to what Judge Carnaval... I think where Judge Carnaval said there was evidence that he knew, but the justice didn't charge correctly. No, I don't think that there was evidence on his specific mens rea on what was authorized. That was 100% excluded. 100%. And if it's 100% excluded to the tune of, I will hold you in contempt if you try to come get it out of any witness, then that denies the defendant his right to a fair trial, to present evidence. And I think while the Ruan case did not specifically address it and Smithers didn't address it, those cases were concentrated on jury instructions. But again, jury instructions cannot be given if there is no evidence. And how can you present a jury instruction to a court and say, please give this jury instruction when you've excluded all of our evidence to support it? So in order to rule in your favor in this case, we've got to address the and-or issue, or not? I believe the court does and should. Do we have to say it was error? No, I think the court needs... That the or was error? No, I think the court needs to look at the jury instruction per Ruan, per Smithers. The jury instruction that was given in this case, it was specifically limited to outside the bounds of medical practice. There was no... It said, the government may meet its burden by establishing that the physician's actions were not for legitimate medical purposes in the usual course of professional medical practice, or beyond the bounds of professional medical practice. The problem is there's no precursor evidence that was permitted to be considered by the jury. That's the difficulty in the instruction. Well, okay. Maybe I'm still... I guess I'm still having a little trouble, and if you could help me with this.  It sounds like you wanted to introduce evidence that it was not improper to tell Nurse Jackson that she could do this unless otherwise told she can't. I think I understand that, but if that was okay to do that, and then information... Your client learns of information that what Nurse Jackson is doing is outside the bounds of the medical practice, does he have an obligation to stop it? Or is he acting outside the bounds of medical practice by not stopping it? I think he does, and I think he did address it with Nurse Jackson. But that testimony obviously was not accepted by the jury. I guess that's a little bit of my question then. If what he did once... If it was okay to do initially to allow her to go forward, and he was able to present what he did in response to that learning about her conduct, I'm trying to see what's the prejudice. If the jury decides on... What could he say about his knowledge once he learned of it in a new trial that he wasn't permitted to do now? Well, I think the whole premise of this entire case is summed up in the Rule 29 colloquy with a district court judge. So what can we learn? What did Dr. Naum do that was in violation of a federal law? That is the question. I think the Rule 29 colloquy, I have a minute here, indicates, and I'll just sum up with this. As long as you have questions, you can go ahead. Okay. So the district court said, let me stop you there. I know that what Dr. Mauchalik testified about, and it was his opinion, but it has to be based on something in the rule of law. What is it? Otherwise, this is a medical malpractice case. I mean, I understand here that one of the overreaching implications of this case is that patients who are prescribed suboxone at a clinic like AHC may be receiving medical care that is substandard. And that may be a violation of best practices and below the standard of care required of physicians. And in fact, I think, I don't argue that the government in this case has put on an overwhelming amount of evidence about such patients may not be treated as patients that are in the regular primary care practice or specialty pain practice or something like that. But how is this a violation of federal law? So as to the conspiracy, you believe that part of the agreement that you've established a primary case is, face a case about that is Eric Drake, Sharon Jackson, Dr. Brizuela, and Dr. Nam through the ongoing practice of advanced health care did what? Agreed to do what? So that's, and that's a violation of federal law under 846, because it's outside the bounds of professional medical practice, because, all right, so you think the violation of federal law is in the authority to delegate to her and doesn't have anything to do with the timing on which the defense is focused? I mean, I think a big part of the defense's case here, at least in this argument, is he actually did order the prescription. Forget whether anything was delegated or authorized, Dr. Nam ordered the prescription because that prescription was the one ordered 30 days before by him when she saw, when he, she saw the patient. And if she violated his order, that's on her. It's not on him. The court then asks the prosecution, do SAMHSA regulations, does TAP-30 and the guidelines from the TIP-40, do they mandate or direct that a physician may not write a prescription for Suboxone without seeing the patient? Prosecution's answer, I don't believe that it explicitly says that. I think it is implicit in a just, fundamentally, as a prescriber who is making an order for treatment. The court then sums it up by saying, I don't think we're going to be asking a jury to convict someone for a criminal conviction on implicit. It can, you can link up the facts, but I think the law has to be not only explicit, it has to be unambiguous, doesn't it? It has to. You have to have the directives. And that, I think, sums up this case. Because absent presenting the SAMHSA guidelines, and absent presenting his mens rea, this was a medical malpractice case. And I think Ruan and Smithers talk about the jury instructions, but Ruan says the first prong is the burden of production of evidence, that it was authorized, it's on the defendant. Well, when the defendant is not authorized to produce that evidence, how in the world can it end up in a jury instruction? How in the world can it end up being considered by a jury? And without it, it took away the mens rea, and therefore, he was convicted. I think the Supreme Court, United States Supreme Court, recognized the importance of the facts of this case. While they didn't address the and or, they recognized the facts of this case. So you think Ruan is more helpful to you than Smithers? I think so. I think they're distinguished because Smithers was more, I mean, it was 800 and some counts. And it was all on a jury instruction. And this was more than a jury. You can't have a jury instruction when you don't have the evidence. And that's really why this case is distinguished. Thank you. You've reserved some time. Thank you, Your Honor. Ms. Herney. What's the government think about this? Good morning, Your Honor. May it please the court. My name is Eleanor Herney, and I represent the United States. And I think I'm gonna deviate a little bit from my outline and try to address some of the questions that came up today before circling back. So the first thing that I would like to touch on is the mens rea issue and how it ties specifically to the jury instructions in this case. And I think one of the things that we can start with today is that below the evidence that has been identified as being precluded, which prevented Dr. Nam from being able to argue that his behavior was in fact authorized, wasn't directed at his subjective knowledge. So there's two categories of evidence there. And the first is we have the Vermont and I believe the Massachusetts models. And it deals with office-based opioid treatment. And the exclusion of that evidence wasn't related to Dr. Nam's statement or proffered testimony that he believed he was acting in compliance with those models. Those models were just irrelevant because the facts were wholly distinguishable. In the both Vermont and Massachusetts models, the care-based team approach was completely different. There were nurse practitioners involved, similar to Dr. Helm's practice, Dr. Nam's expert witness who testified that he actually has a nurse practitioner who he works with. And nurse practitioners were able to independently prescribe. Now, where's the mens rea charge in this indictment? Where, I apologize, Your Honor. Where'd you all allege anything about knowingly in this indictment? Your Honor, I believe that it's in the standard 841 language. Well. Although I don't have it in. You're charging him with 841, which doesn't have anything in it about this stuff about the legitimate medical purposes or bounds of professional medical practice. That's not in 841. No, Your Honor. But you're charging him with a crime under 841. Correct, Your Honor. And I believe that that's where once evidence of authority. All that comes out of regulations and stuff created by the Board of Medicine. Isn't that right? I believe. You argue that it gets in there under this authorization clause. That's correct, Your Honor. Later on in 841. And I believe that authority was delegated to the Attorney General fairly broadly. And then the regulations were promulgated under that. So that would be. Is this a Supreme Court case? Loper Bright having to do with this? Well, Your Honor, the government. You're trying to prosecute him under some regulation written by some government lawyer. So, Your Honor, the government's position. A doctor or somebody. In terms of Loper Bright would be, first, obviously, it has not been briefed by the parties. And second. No, I know it's not briefed by the parties. But it's the law of the land. Yes, Your Honor. And I'm happy to address it as best I can. So in terms of Loper Bright, I think we would only be in a situation in which Loper Bright had a role in this case if we were disputing the ambiguity of the sentence. We simply disagree with what that regulation means between the parties. As to whether or not. I didn't mean to get you off track. I was just throwing that out. But what you do need to focus on is how you get around Smithers. Yes, Your Honor. And how you get around Ruan or whatever the name of it is. But particularly Smithers. That's recent authority in this court. And it's a very thorough opinion. It's a unanimous opinion. And it's a similar case. And they upheld the convictions of the doctor. Now, I apologize, Your Honor. I believe in Smithers, did they vacate the convictions? Went the wrong way. Yeah. I got the wrong way. Well, they threw it out. It would certainly be different for my response. They threw it out. I strike that. I believe Smithers is actually. They reversed it. Judge Gregory wrote it and they reversed it. I believe Smithers is actually quite distinct from this case for several reasons. What did they say about the and or provision? The and or provision was left open. It's just a question in Smithers as to the subjective intent. And in Smithers. That's right. But they said you had to have. In footnote five, he specifically said that. But what about the allegation of knowingly? He said you need an allegation of knowingly. You may be able to get around this and or if you put knowingly in that instruction twice. Absolutely, Your Honor. Knowingly before the legitimate medical purposes and knowingly before the bounds of professional medical practice. But you don't have it in there. No, Your Honor. But we believe that in this case and as the government's, I believe, second supplemental response brief noted, we're not disputing that there was not the subjective knowledge instruction as Smithers set forth, that there has to be some directive that the knowledge authorization goes just beyond the act. And it's not alleged in the indictment. The knowingly is not alleged in the indictment. The way Judge Gregory explained it. You don't have the allegation that he said could save it. The and or thing. You don't have it in there. Are you conceding that there was error in this situation? Your Honor, we are conceding that there was rule on error in the jury instruction. You are? Yes, Your Honor. And that was the position that the government took in the second supplemental response brief. And you're contending that it's harmless error? That's correct, Your Honor. And that would be where I appear to be directed to head next and I'm happy to do so. So the government's perspective on harmless error is that. Just before you answer, is it harmless error or is it prejudice that under clear error? In other words, whose burden is it to show whether it's either harmless or non-prejudicial? Your Honor, I believe that typically the answer to the question of who the burden is on is tends to be the government in this situation. And I believe that's how we've approached it. I don't think that we have briefed the question of whether clear error applies and where the burden is. We originally argued plain error. That's what I meant, plain error rather than clear, I'm sorry. And I believe after Judge Gregory's decision in Smithers, we backed off on that perspective in his analysis of how mens rea and the and or question are to some extent at least intrinsically intertwined with each other, not to use. Well, go ahead then. So you concede error, rule on error. You concede it's your burden to show harmlessness. So what's your position on that? So our position on harmlessness is that the uncontroverted evidence at trial shows that even if the jury had been expressly instructed that the government must prove not only that the prescriptions were unauthorized, but that Dr. Nam knew the prescriptions were not authorized, a reasonable jury would not have reached a different result. And specifically, if we look in this case, even only at Dr. Nam's testimony, as I believe this court previously identified in its questioning, Dr. Nam testified that he knew he was not permitted to delegate his prescriptive authority to Nurse Sharon Jackson, who was a registered nurse. He testified that he knew Nurse Jackson was overriding his instructions to wean or decrease patients' doses. He testified that he confronted Nurse Jackson about increasing a certain dosage, but to no avail. And he testified that once Nurse Jackson did so, and I'd note using Dr. Nam's DEAX number, that he couldn't turn the patient away. Dr. Nam testified that specifically he was not in agreement with Nurse Jackson doing that, that he was happy that, quote, they could get treated, but was I in agreement with her doing that? No, end quote. And I would note, as Ms. McArdle did note as well, that the jury did not acquit Dr. Nam of the conspiracy count and clearly did not credit his testimony that he wasn't in agreement with Nurse Jackson. But Ms. McArdle, she came at this case in a different way than I had thought about coming in. She says that the exclusion of that evidence by the judge is what the error is. Because then he went on to charge something that they weren't entitled to contest. MS. MCARDLE I would disagree, not with your characterization, but with the argument itself in the sense that I believe that is recasting an issue that was not argued in that way. So as I was stating earlier when discussing the Vermont and the Massachusetts models, and then moving into the opioid-based treatment regulation specifically, which I believe was that subset regulation that was referenced and which this court in its prior panel opinion pre-Ruon acknowledged was not applicable by its terms. MR. RUONE Was the exclusion of the evidence based on it's not relevant, it doesn't meet the Daubert test? Why was it excluded?  I believe it was a combination of the two, that there was a hearing on the matter, but I think it really did come down to that Rule 403 question as well as relevance. MR. MCARDLE And was there a pre-trial motion in limine on this?    So you litigated it before the trial started?  Yes, Your Honor. And it was raised multiple times throughout the trial as well. But I would note that the argument didn't deal with whether or not Dr. Naum believed that these regulations or that that program model actually applied to him. It was solely about whether or not it could be presented. And in that sense, it wasn't really tied to Ruon in any way. Obviously, it couldn't be as it predated it. MR. MCARDLE But I think the argument is that there would be testimony that it is proper to delegate authority except as otherwise authorized, that doing that is not contrary to the law in any way. I think that's what I'm understanding your colleague to be saying. And that the inability to present that evidence, that if that's what the standard of care is, and that that's consistent with what Dr. Naum did here. So his delegation is not even contrary to the bounds of medical practice, and certainly not knowingly. So I get your point that they weren't talking about his subjective intent. But if the testimony was that he could do this, then it wouldn't even be wrongful, much less knowingly wrongful. And so I guess I kind of understand that point as to why Dr. Naum would think that would be relevant. I think the real question, though, or a question, is what you, I think, were getting at. Even if that comes in and it's okay to set this framework up, that she's going forward unless otherwise authorized, he did become aware of conduct that he didn't agree with. And what happens then? Is that what you're saying? That's getting very close and better articulated, Your Honor, but yes. And what I would note as well, I think there's two parts to it, is first, much of that evidence was still effectively admitted through Dr. Helms' expert testimony at trial, where he testified regarding the use of nurses. Right. And further... But Dr. Naum never said. It's really interesting. And I was frustrated at first, because I was like, why aren't y'all asking about knowledge? And then I was like, okay, Ruwan predated all this. So I kind of understood it more. I thought, I think I understand it more. But Dr. Naum never said, I don't think, anywhere explicitly that what... He said he didn't agree with what the nurse did. And then he said, but I didn't want to send the patients out on the street. And there was really not a discussion about whether he knew what she did was outside the bounds of medical practice. Now, I think you could read it and say, that's implicit in what he was saying. But it was never explicit in what he was saying. At least, it didn't seem that way to me. And it kind of shifted as to whether it was with a clean heart, if you will. I was doing, I was not putting the patients in a bad situation. So if it wasn't explicit, can we really say this error was harmless? Your Honor, I believe that we can in this case, because again, we can look past just his testimony, the actual oral testimony itself, and also look at exhibits that were presented. We can look at the letter to the West Virginia Board of Osteopathic Medicine, and see that the way he represented ADVANCE to be running was not consistent with how it was actually running. And that is another point of distinction from Smithers as well, which is in Smithers, when the doctor in Smithers presented his own case, he had, as I believe Judge Gregory identified, an innocent explanation for each deviation. And of course, there's always the argument that this excluded evidence could have been that innocent explanation. But I would note- You wouldn't let him testify. In this case, he wasn't allowed to testify. Because of your exclusion, motion and limit. Well, Your Honor, my recollection of the motion and limine, and unfortunately, the size of the joint appendix has precluded it from being present with me, was that it wasn't necessarily that Dr. Nam was going to testify, that he believed that his behavior was in accordance with this model, but that this model existed. And there were key distinctions between those models and the way ADVANCE was run. And part of that, as I believe I already identified, came down to how the collaborative care team was built. So- Which evidence question, or something else? I apologize, Your Honor. Which evidence question? You're conceding error on men's rape. Your Honor, the government's position is that we are conceding error in the sense that the Ruan's subjective intent instruction was not given to the jury. But that's tied into that- I'm conceding error on the evidence question. As to- You concede that it was preserved. It was litigated pre-trial. So your error concession doesn't cover that, or does cover that? No, Your Honor, because I don't believe that that was- Looking at that specific subset, previously, as I believe we noted in our first supplemental brief, we weren't actually sure, as the government, what this evidence of his subjective knowledge that was excluded was. We assumed that it was likely the Vermont models, and we disagree that the court's ruling regarding, or not even ruling, but the prior case law regarding the objective standard was really what barred the admission of this evidence. Well, don't you think that it makes a difference in this case, when that evidence is barred from being considered, and then the judge charges the jury and uses or as opposed to and, and when on the other side of or, there's no evidence to give that charge. So it makes it- It looks like it makes it way too easy for a jury to convict. Setting aside the question of the and or, which I understand is really inherent in this, and were the court to wish to decide it, the government would appreciate the opportunity for additional briefing on that specific issue. But- My follow-up was going to be, why don't we just settle this now? Why should it not be and in a case involving a doctor, where clearly both sides of that charge have to be proved beyond a reasonable doubt? Well, Your Honor, I believe that under various different statutory interpretation principles and looking at this, that or is also an acceptable construction, and it's consistent with how it's interpreted elsewhere, including in its- I understand that. I used the word legal fiction a while ago. That's what it is to me. I know it's interchangeable, but in a case like this, why should it be not interchangeable? Well, Your Honor, I believe that that determination, I don't think that we need to reach that in this case. And one of the reasons for that is Dr. Nam's trial testimony and much of the evidence that was presented is inconsistent with the concept that his testimony might be different if he were permitted to present evidence of his subjective good faith. Of course, he might still be able to state, I previously went to one of these continuing medical education seminars, and I met with somebody who works at one of these models in Massachusetts. And they stated they received state funding and they get to use nurse practitioners and all of this different information. And that testimony would simply not be consistent with the testimony that we have on the record. And of course, I think there's an opportunity to read the ambiguity there and to look at it in different ways. But at the end of the day, he did testify that he knew that she could not do that. Yeah, what's the interesting thing, he said he learned about what she did. He said he disagreed with it. I agree with you, the statement to the medical board would suggest he not only disagreed with it, but he thought it was that type of practice was not allowed. You know, it's not really clear about what he did once he became aware of it. Although he, you know, there was testimony about didn't leave the practice and I didn't want to have the patients on the street. I just, I'm wondering if there's enough there where we can say when the rules have been changed, the Supreme Court changed some rules, we've changed some rules that, you know, if it's not explicit in the testimony, should he have a chance to make his case on subjective knowledge? You know, if those are now the ground rules. I mean, if it was, it seems like it's got to be almost undeniable that it was with knowledge for us to not give him a chance to, you know, make his argument under the new rules. And I guess your argument is that it's undeniable. I think that, I guess that's the big question. This is convenient timing, I would like to answer. You answer all the questions you get from the court. Absolutely. You're right ahead. And I would say that it, that the evidence in the record is undeniable, but I... But would you agree, just, I want you to finish that and I know, would you agree if there's some evidence that it's knowledgeable and some evidence that it's not, and maybe even if there were some evidence that was precluded that it's not, that we, he would deserve then to be able to have, you know, a retrial with the, you know, with the correct rulings. It's not like, is there sufficient evidence? It's got to be clear that he couldn't, you know, he couldn't avoid a finding that it was knowledgeable. Your Honor, in that specific circumstance in which there was some evidence on both sides, similar to that in Smithers, I would agree that under the harmless error doctrine, that that's precisely what would be required. I just simply disagree as to the weight of that evidence. I appreciate it. And if I could just briefly attempt to summarize. Well, I want to ask you, again, exactly what's your conceding error on? I want to tie you down on that, the government down on that. Because it seems, you go ahead and tell me what it is. Your Honor, the government is conceding that Dr. Nam's, the jury instructions in Dr. Nam's case did not incorporate evidence and element of, or expressly indicate that there had to be knowledge as to the authorization. Are you conceding that his, that the restriction on his testimony pursuant to the motion in Lemony, the one that Judge Quattlebaum was talking about was erroneous? No, Your Honor, the government is not conceding. So you're not conceding that part? No, Your Honor. But if they're tied together, how do you make that distinction? Your Honor, I would respectfully submit that they're not tied together. There is an objective knowledge. There's that objective standard. And I don't want to use the phrase standard of care. Judge Gregory's opinion said that that's, that applies to the second prong after the oar, the bounds of professional medical practice. That's the objective. That can be objective. But that the first part has a subjective part to it. Your Honor, is that the portion of the opinion? Isn't that right? I believe that there was a portion of the opinion in which he noted that there is a subjective connotation to, I believe, legitimate medical purpose, and that it could have been cured with a specific intent instruction, which I believe... And that's the first prong, legitimate medical purposes. The first part of it, the first alternative before the oar. Yes, Your Honor. That has this objective component. And that's what he wanted to offer this evidence on, that you all had stricken, or barred. Your Honor, I would submit that the evidence that Dr. Nam wanted to submit was regarding, essentially, the general objective standard of care. He wanted to submit evidence that the use of nurses and, you know, less doctor oversight, more of a collaborative care team was accepted elsewhere. And that testimony came in through Dr. Helm, but the specific testimony regarding these models that had state funding, they were tied to state regulations, and the specific SAMHSA information regarding opioid-based treatment programs, which, again, as this court's opinion in this case, prior to Ruan noted, is simply inapplicable. Dr. Nam was a data waiver-exempted physician. It was not an opioid-based treatment program under that. So in ruling on the motion in limine, the district court exercised its authority to exclude evidence that was simply not relevant on its face as to the objective standard for physicians. Which goes to the second prong after the oar. Your Honor, I believe... Under Smithers. I think that would be a fair characterization of it as the two kind of dovetail at points. If I might briefly make my remaining argument. Go ahead. Okay. Very briefly, Your Honor, the government would submit that regardless of Ruan, Dr. Nam's conviction for conspiracy to distribute Suboxone as charged in count 22 remains valid because the jury instructions as to that count effectively incorporated knowledge as to the unauthorized nature of the instructions. You're limiting your argument to the 846 charge? You say conspiracy? Yes, Your Honor, and that would... You're not... So you're conceding error on the 841 charges? Your Honor, I believe that this is the error that we previously discussed post-Ruan regarding the specific intent. But he was convicted of 841, wasn't he, Don? Yes, Your Honor. So I'm not sure I understand what you just said. I'm sorry if that was... It's on my point. Are you saying that in the conspiracy charge you're not considering... You're not conceding error that the charge was okay? Your Honor, in the charge itself that was given to the jury, Dr. Nam effectively, for the jury to find him guilty beyond a reasonable doubt had to find that he knowingly entered into an agreement to distribute substances without authorization. And that specific... And I'd like to make sure I've got my language right as I will not have a chance to clean it up. And I would note I have seriously run over my time and I apologize. I want to get this right this time. So specifically, the jury was instructed as to the elements of the conspiracy count that Dr. Nam could be found guilty only if he and another person had an agreement to distribute Suboxone outside the bounds of professional medical practice and that he knew of the agreement and that he joined it, requiring the government to prove that Dr. Nam knew that the prescriptions that his co-conspirators and specifically Nurse Jackson issued were unauthorized. In other words, Dr. Nam had to know that the prescriptions were outside of the bounds of professional medical practice. So your concession of error only relates to the conspiracy conviction, 846? No, Your Honor. So separating it out in terms of the instructions and looking at... You're conceding error on the 841 convictions. Yes, however, we are maintaining steadfastly that any error was harmless. All right. I understand that you want to say it's harmless, but you do say it's harmless. You absolutely, the government says harmless error. We hear that from the government a lot. We're familiar with harmless error. We got the public prosecutors who are experts in harmless error. I was one of them at one time. So in summary, the United States submits that this court should affirm Dr. Nam's convictions in the entirety, but regardless of the court's ruling on the four substantive distribution counts, Dr. Nam's conspiracy conviction stands separate and should be affirmed because of those jury instructions, which require defining as to Dr. Nam's knowledge. You're limiting your argument. You're trying to limit your argument to the conspiracy. You said this conspiracy conviction should be sustained. So, Your Honor, the government's position is that all of the convictions below should be affirmed solely that there's a separate independent basis. You're just saying that on the conspiracy conviction, you're not conceding that knowledge was not charged. You're saying the conspiracy conviction, you think, sufficiently charges subjective knowledge. Yes, Your Honor. Why don't you just leave it at that, standing on your conspiracy charge and concede the substantive charge? Because you might get an opinion you might not like or the government across the board might not like because this has been an ongoing battle between the pill doctors and DEA and you might get a tough decision. I do appreciate the warning, Your Honor. The government, if there are no further questions, would sit back down with no time to cede. Judge Weidemann, are you satisfied? Thank you. Yes, appreciate it. Thank you very much, Ms. Harney. We appreciate it. Ms. McCardle? Lots to uncover there. The first thing is with regard to standing on a conspiracy instruction versus the substantive. I think Smithers addressed that, that the prejudice related to count one spilled over to count two and they can't be separated. I think Smithers specifically addressed that in the opinion. Knowingly entered into an agreement, he and another person, the government indicated and quoted from the transcript that Dr. Naum did not specifically agree with Nurse Jackson's conduct. He definitely said that. I don't think there's any dispute that once he was confronted with questions about whether he agreed with what she did, it was pretty clear he didn't. The question then is what did he do with knowledge of that? A lot of your, I think, as I'm understanding it, the excluded evidence would go with the issue of whether it was okay to allow her to go forward and kind of go at this unless he says no. Right. But at some point, if you learn that the nurse is acting contrary to the bounds of medical practice, which he seems to have done, it seems to be then the next question is whether allowing that to continue is a knowing violation. Right. And I think that's what government's saying is, they're probably not conceding it, but I'll give you everything up until the time he learns of it. But once he learns of it and doesn't stop it, how is he going to say it wasn't a knowing violation then? Well, the question then becomes, is Nurse Jackson's conduct in not stopping attributable to Dr. Naum? Well, does he not have, as the doctor overseeing the nurse, the responsibility to stop knowingly? Yes. And I think the key point there is he would say, wean this patient off. All right. So weaning, in other words, this whole case of Dr. Naum is on Suboxone. It's on a medically assisted treatment. It's not on prescription of opioids. It's not on prescription of fentanyl. It's not on prescription of oxycodone. It's on Suboxone, a very drug that is used to wean people off. So that's why these clinics exist. So I think you have to weave that in with a do no harm Hippocratic Oath. This is where the difficulty lies in using 841 to prosecute doctors under regulatory provisions that are not passed by Congress, that are imposing strict liability. But you're getting, I think, tell me if you're right. I hear what you're saying is there's a legitimate question about when Dr. Naum learns that patient A, that Nurse Jackson has made a change, issued a prescription or made a change in it and learns of that, he knows is wrong. And there's a legitimate question about what to do next with respect to patient A. Do you kick her out? Right. Or he out? Right. Or do you do some weaning thing? I think that is fair. But I think the governance position is not about what you do to patient A. The point is, did you stop Nurse Jackson from doing that with other patients? And to answer your question, Your Honor, this was a period of eight years. Dr. Naum worked part time at this clinic. Started out with 55 counts, 39 were severed. The remaining ones, I think there were 10 left. Out of those, the government dismissed more. He went to trial on six. One of them, he was acquitted because the pharmacy made an error. And he was, so five patients in a total of, I think, 800 some is what we're talking about in this case. Five patients in the course of 12 years that this indictment covered. So strict liability, I think, is a problem, especially when you omit the, I think counsel talked about the Vermont and Massachusetts models. They're very different. Dr. Helms was not allowed to testify to that model that he performed medically assisted treatment. And so I think that's relevant to the subjective knowledge. The letter to the board I have to address because- Now he was convicted on, you said five? Five patients. Five counts. Well, related to five patients out of the entire time. He was convicted on 841 counts and an 846 count? Correct. Okay. Correct. The letter to the board, the government takes a position that he misstated his position to the board. The board did not take any conduct to reprimand him. Didn't take his license. Which board was that? The board of osteopathic medicine. I know there's another board for the board of medicine. Right, he's not under the board of medicine. Right, there are two boards in West Virginia. Yes, yes. One's for osteopaths, one's for- Correct. MDs.  And those boards write these regulations or the legislature? No, the board did not write the regulation. The legislatures didn't write the regulations. These were- The board wrote them. Yes, the board puts together regulations. Okay, yeah, that's what I thought. And then what was- We're talking about the osteopathic board, not the medical doctor board. Correct, correct, because that's what he's under. And the osteopathic board, that's what ended up going to trial, is that Dr. Naum did not see the patients within six months of prescribing the suboxone. So he didn't re-see the patient. So after the government went through all of their evidence, they found five patients over the course of the entire time. And Dr. Naum was making $3,000 a month over 12- He made $360,000. He wasn't getting the money. The nurse and the other person were. So we believe, Your Honor, that the subjective knowledge is crucial in this case, as per Ruan and Smithers, and that Dr. Naum is entitled to a fair trial and that his convictions must be reversed. Well, let me- Because obviously, I missed the way he was thinking about it coming in. And there has been a battle between DEA and Pildon. The question is, in my mind, was that evidence excluded because it's irrelevant, or is there some daubert issue that says it's not admissible? There was no daubert issue, Your Honor. The evidence was excluded because the district judge believed it would confuse the jury as to what the real standard was, the subjective standard for the defendant. And it would confuse the jury by admitting that evidence. That's why it was excluded. Didn't the district court- Maybe this is briefing, not district court, so correct me if I have this wrong. Wasn't there a discussion about whether that standard applied at all to this type of practice? I think the district- It's not just confusing, it's relevant, right? Well, I think the district court said it was splitting hairs between what was the applicable standard. I'm sorry? What was the word? Splitting hairs. Splitting hairs? Hairs, yes. Okay, that's what I get. Splitting hairs. That's what the district court said. You're quoting the district- No, I'm not quoting the district court. I think it's my opinion that the district court was splitting hairs with the Vermont model and the Massachusetts. It is a McArdle thing, yes. But am I right that the district, you may characterize it as splitting hairs. Maybe it is. I'm not getting into that right now. But the argument was in part that it was not relevant. Am I wrong there? No, I think it was, I do, I believe, no. I think that I'm quoting the district court and saying it would confuse the jury to put both of these standards before them. I think that confusing the jury was, were words that came out of the district court's mouth. And just as a footnote, in a subsequent case before just another district court judge where that first part of evidence, authorized, except as authorized um, language and evidence was allowed to be put in, a week later, the defendant was acquitted. Thank you, Ms. McArdle. And I know my records show you, you're court appointed? No. You're not? Oh yeah, actually, yes I am. Are you court appointed or not? I was retained below court appointed. That's what I thought. And I wanted to thank you for your work as a court appointed lawyer in this case. We couldn't do our work without lawyers like you. We appreciate it. And we'll come down and greet counsel and then we'll go on to the next case. Is that all right?
judges: Robert B. King, A. Marvin Quattlebaum Jr., Henry F. Floyd